## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS,
a nonprofit, New Mexico Corporation,

      Plaintiff,

vs.                                             No. CIV-02-1003   JB/WDS

UNITED STATES DEPARTMENT OF
INTERIOR, BUREAU OF LAND
MANAGEMENT,

      Defendants,

NEW MEXICO PUBLIC LANDS
COUNCIL, and NEW MEXICO CATTLE
GROWERS' ASSOCIATION, both non-
profit organizations on behalf of their
respective members,

      Proposed Defendant-
      Intervenors

### MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Proposed Defendant-Intervenors' Motion to Intervene, filed August 11, 2003 (Doc. 12).  The issue is whether the Proposed Defendant-Intervenors satisfy the Federal Rules of Civil Procedure's requirements with respect to either intervention of right or permissive intervention.  Because the Court finds that the Proposed Defendant-Intervenors satisfy both standards, it will grant the motion and allow the New Mexico Public Lands Council ("NMPLC") and the New Mexico Cattle Growers' Association ("NMCGA")(collectively "Livestock Associations") to intervene as defendants in this action.

## FACTUAL BACKGROUND

According to the Plaintiff Forest Guardians' ("Forest Guardians") Complaint, on July 31, 2000, Forest Guardians submitted Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), requests to various Department of the Interior, Bureau of Land Management ("BLM") state offices seeking copies of "lien holder agreements."   Complaint for Declaratory and Injunctive Relief ¶¶1, 8, at 1, 3, filed August 13, 2002 (Doc. 1).   Between August 24, 2000 and September 29, 2000, the various BLM offices responded to Forest Guardians' requests by refusing to provide the information requested.   See id. ¶¶11, 13, at 3-4.   The BLM contended that the requested information was exempt from disclosure under Exemption 6 of the FOIA.   See id.; 5 U.S.C. § 552(b)(6).   Forest Guardians filed a consolidated administrative appeal of the various decisions on September 26, 2000.   See Complaint ¶12, at 4.   The administrative appeal is still pending.

Forest Guardians filed this lawsuit against the BLM on August 13, 2002, alleging violations of the FOIA.   See Complaint ¶1, at 1.   Specifically, Forest Guardians alleges that the BLM violated the FOIA by: (i) improperly withholding agency records regarding "lien holder agreements;" and (ii) failing to comply with procedural time limits under the FOIA.   See id. ¶23a, at 5.   Pursuant to these violations, Forest Guardians requested the following relief from the Court:

     a.       Declare that [BLM] improperly withheld agency records from Plaintiff by: 1) failing to provide all reasonably segregable non-exempt information sought in the request, and 2) failing to comply with the procedural time limits established by the FOIA;

     b.       Direct by injunction that Defendant immediately provide Plaintiff with the records it requested;

     c.       Grant Plaintiff its costs of litigation, including reasonable attorneys fees as provided by the FOIA, 5 U.S.C. § 552(a)(4)(E); and

       d.      Provide such further relief as the court deems just and proper.

Id. ¶23(a-d), at 5-6.  The BLM timely filed its Answer.  See Answer, filed September 12, 2002 (Doc.

5).  The docket shows that Forest Guardians has not filed an amended complaint or requested leave

to do so.  See Docket Report as of January 12, 2004.

      The "lien holder agreements" that Forest Guardians seeks are part of a program that the BLM

manages which allows a federal grazing permittee to use his or her grazing permit as collateral to

obtain financing for ranch operations.  See Complaint ¶9, at 3.  These "lien holder agreements"

contain sensitive and private financial information about the permittee.  See Declaration of Caren

Cowen ¶6, at 2 (executed August 14, 2003); Declaration of Mike Casabonne ¶6, at 2 (executed

September 11, 2003); Affidavit of Randall G. Major ¶8, at 2 (executed August 11, 2003); Affidavit

of Jim Embree ¶7, at 2 (executed August 18, 2003).  The BLM asserts that information about "lien

holder agreements" is confidential and protected from disclosure under Exemption 6 of the FOIA.

See 5 U.S.C. §552(b)(6).  Forest Guardians is seeking to have the Court order the BLM to make this

confidential information available to the public.  See Complaint ¶23b, at 6.

      Forest Guardians, the BLM, and the Honorable James A. Parker, then-Chief Judge, discussed

narrowing the scope of relief during the scheduling conference that the Court held on  June 9, 2003.

See Clerk's Minutes, filed June 9, 2003 (Doc. 10).  At that time, Judge Parker asked whether it were

possible for Forest Guardians to determine if it would elect to narrow the scope of relief sought

before the time that briefing was to take place and to inform the Court by letter.  The Court did not

indicate that Forest Guardians would need to ask for leave to amend its pleadings to so limit the

scope of relief it sought.[1]

Forest Guardians did not send the Court any letter indicating a decision to narrow the scope of its relief.  In a telephone discussion several days before the time the Proposed Intervenors filed their Motion to Intervene, however, counsel for Forest Guardians informed counsel for the Proposed Intervenors that it was seriously considering narrowing the scope of relief sought in this proceeding to avoid public disclosure of any such arguably personal financial information about specific loan amounts made to specific ranchers.  At the time that the Proposed Intervenors filed their Motion to Intervene, Forest Guardians' counsel had not yet taken a position and had stated that it would take a position after further consultation with his client regarding legal strategy and objectives.  The BLM also had not yet determined what position, if any, it would take with regard to the motion.

Forest Guardians did not make its decision to narrow the scope of relief until the time that it filed its motion for summary judgment.  Forest Guardians filed a Motion for Summary Judgment on August 19, 2003 (Doc.  15).  In that motion, Forest Guardians states the relief it seeks differently than it does in the Complaint.

> Plaintiff . . . specifically elects to limit the scope of the relief requested in this proceeding to . . . 1) an identification (for each BLM Field Office) of the names of the financial institutions involved in the practice of lending using BLM grazing permits as collateral, and 2) aggregated financial information (by Field Office) as to the total dollar amount of loans secured by BLM grazing permits.

Memorandum in Support of Plaintiff's Motion for Summary Judgment at 4-5, filed August 19, 2003 (Doc. 16)(emphasis in original).  Forest Guardians then provided specific details regarding the limited scope of relief it is requesting:

---

[1] On August 25, 2003, the Court Clerk entered a Minute Order reassigning this matter from Chief United States District Judge James A. Parker to United States District Judge James Browning.  See Minute Order, filed August 25, 2003 (Doc. 20).

Plaintiff's July 31, 2000 FOIA request also sought additional information including names of allotments and permit holders, as well as identification of the amount of money involved in each individual lien holder agreement.  For purposes of this litigation, however, Plaintiff affirmatively elects to not seek any relief from this Court that would result in the release of those particular categories of information contained in BLM's lien holder agreement records in a manner that would reveal information about the amount any specific permittee's loan amount collateralized by a BLM grazing permit.

Id. at 5 n. 4 (emphasis in original).  The Livestock Associations filed their response to the Motion for Summary Judgment in compliance with the Court's briefing schedule.  See Proposed Defendant - Intervenors' Response to Plaintiff's Motion for Summary Judgment, filed September 18, 2003 (Doc. 24).

## THE PROPOSED INTERVENORS

The Proposed Intervenors, the NMCGA and the NMPLC, on behalf of their members, seek intervention to protect the rights that their members have in the continued confidentiality of the financial information contained in the "lien holder agreements."   They filed their motion for intervention on August 11, 2003.  The Livestock Associations attached a proposed answer to their motion.

NMCGA is a non-profit membership corporation formed in New Mexico in 1914.  See Cowan Decl. ¶2, at 1.  The NMCGA represents more than 2,000 members of the New Mexico livestock industry, including members who graze livestock on lands that the BLM manages.  See id. ¶¶7,9, at 2.  NMCGA's purpose includes the advancement and protection of the cattle industry in New Mexico.  See id. ¶5, at 1.

Many members of the NMCGA use BLM grazing permits and some of those members participate in the "lien holder agreements" system.  See id. ¶¶10-11, at 2; Major Decl. ¶7, at 2;

Embree Decl. ¶6, at 1-2.  These members are financially dependent upon their ability to graze livestock on BLM managed lands.  See Cowan Decl. ¶12, at 2; Major Decl. ¶¶11-12, at 2; Embree Decl. ¶10, at 2.  Release of the financial information that the "lien holder agreements" contain would be devastating to the NMGCA and its members.  See Cowan Decl. ¶¶13-14, at 2; Major Decl. ¶¶14-15, at 2; Embree Decl. ¶¶13-14, at 2.

NMPLC is a non-profit membership corporation formed in New Mexico in 1986.  See Casabonne Decl. ¶2, at 1.  The NMPLC represents approximately 4,500 members of the New Mexico livestock industry.  See id. ¶7, at 2.  The NMPLC's purposes include the advancement of the economic, educational, political, and legal interests of New Mexico's livestock industry.  See id. ¶5, at 1.

Many of NMPLC's members graze livestock on federal lands that the BLM manages.  See id. ¶10, at 2.  The ability to graze on BLM managed lands is essential to these members' financial viability.  See id. ¶12, at 2.  Some of these members participate in the "lien holder agreements" system.  See id. ¶11, at 2.  Disclosure of the private and confidential information contained in the agreements could jeopardize these members' ability to secure adequate financing and could hurt the New Mexico livestock industry.  See id. ¶¶13-14, at 2; Major Decl. ¶¶14-15, at 2; Embree Decl. ¶¶13-14, at 2.

## 1999 LAWSUIT

The Livestock Associations argue that this case is similar to a District of New Mexico case that Forest Guardians filed in 1999.  See Forest Guardians v. United States Forest Service, Case No. CIV-99-00615, Complaint for Declaratory and Injunctive Relief, filed June 1, 1999.  In that case, Forest Guardians sought copies of "escrow waiver" documents from the United States Forest Service

("USFS"). Id. ¶8, at 2; id. ¶26b, at 6. An "escrow waiver" document is similar to the "lien holder agreements" that Forest Guardians seeks in this case, and contains the same sensitive and private financial information. Id., Memorandum Opinion and Order at 4-5, filed January 12, 2001.

In the 1999 case, the USFS redacted portions of the "escrow waiver" documents and released the redacted documents to Forest Guardians. Id. at 5. Despite the redactions, the USFS released a substantial amount of personal financial information. Forest Guardians sued to obtain the redacted information. The NMCGA and the NMPLC, along with the Public Lands Council, intervened to protect the interests of the permittees. See id. at 10-11.

In his decision on the merits, the Honorable E.L. Mechem, Senior United States District Judge, criticized the USFS for releasing any of the personal financial information. The Court also held, as a matter of law, that such information, including names, addresses, loan amounts, names of financial institutions, and descriptions of collateral, was exempt from release pursuant to Exemption 6 of the FOIA. See id. at 44. One issue in the current case is whether the Court's prior opinion controls this case. As in the earlier case, Forest Guardians is suing a federal agency seeking personal financial information on federal grazing permittees. And, once again, the Livestock Associations seek to intervene to protect the permittees' interests.

## LEGAL ANALYSIS

## I.   RULE 24(a) STANDARDS FOR INTERVENTION AS OF RIGHT

Rule 24(a) of the Federal Rules of Civil Procedure provides, in part, that:

Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).  Under rule 24(a), an applicant for intervention may intervene as of right if: (i) the application is timely; (ii) the applicant claims an interest relating to the property or transaction that is the subject of the action; (iii) the lawsuit may as a practical matter impair or impede the applicant's interest; and (iv) existing parties do not adequately represent the applicant's interest.  See Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir. 1996).  The United States Court of Appeals for the Tenth Circuit has noted, without criticism, that the district courts tend to construe the test for intervention liberally in favor of intervention.  See Utahns for Better Transp. v. United States Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002).

    A.    **TIMELINESS**.

    "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"  Utah Assoc. of Counties v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001).  "This analysis is contextual; absolute measures of timeliness should be ignored."  Id. (citation omitted).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.  Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'"  Id. (citation omitted).

    In this case, the requested intervention will not hurt anyone, and such intervention would attain greater justice.  Although Forest Guardians filed this case more than a year ago, not much has occurred procedurally.  Forest Guardians filed its Complaint, the BLM served an answer, the Court held a status conference, and the parties have briefed a motion for summary judgment.  See Docket

Report as of January 12, 2004.  The Livestock Associations have filed a response to the motion for summary judgment.  See Proposed Defendant-Intervenors Response to Plaintiff's Motion for Summary Judgment, filed September 18, 2003 (Doc. 24).  The Court has not yet ruled on the motion for summary judgment.  Given that the Livestock Associations have complied with the current briefing schedule that the Court established, and because the Court has not addressed any substantive issues, the requested intervention will not prejudice the existing parties.  Accordingly, the Livestock Associations' application for intervention is timely within rule 24(a)'s meaning.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1250.

   **B.**  **PROTECTABLE INTEREST**.

   "Under Rule 24(a)(2), the intervenors must 'claim . . . an interest relating to the property or transaction which is the subject of the action.'"  Id. at 1251.  The Tenth Circuit requires that the interest be "direct, substantial, and legally protectable."  Id. (quoting In re Kaiser Steel Corp., 998 F.2d 783, 791 (10th Cir.1993)).  The Tenth Circuit has also noted that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Utah Assoc. of Counties v. Clinton, 255 F.3d at 1251-52.

   The threshold for finding the requisite legal protectable interest is not high.  The Tenth Circuit has stated that, in determining whether to grant intervention, the Court may consider any significant legal effect on the applicant's interest as the Court is not bound by a strict res judicata test.  See Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 843.  Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.  See Utahns for Better Transp. v. United States Dep't of Transp.,

295 F.3d at 1115.

The Livestock Associations contend that they have a legally protectable interest that is related to the subject matter of this case. This case involves the potential release of private and confidential information about grazing permittees that is on file with the BLM. Specifically, Forest Guardians is seeking to compel the BLM to release information that the "lien holder agreements" contain. See Complaint ¶23b, at 6.

Forest Guardians stresses that the scope of the relief that it seeks is limited. Forest Guardians contends that it is no longer seeking the release of any of the purportedly private or confidential information that the Intervenors assert they have an interest in protecting from disclosure. In the Memorandum Forest Guardians filed on August 19, 2003 in support of its Motion for Summary Judgment, Forest Guardians elected to limit the relief sought in this case to information contained in BLM agency records in a manner that will insure that the BLM will not release such private or confidential information regarding any particular BLM grazing permittee or any specific permittee's loan amount in this proceeding.

Forest Guardians contends that, rather than the information that the Livestock Associations are worried about, this action seeks public release under the FOIA of information in the BLM's lien holder agreement records concerning: (i) the identity of lenders involved in the practice of using public lands grazing permits as collateral using "lien holder agreements," and (ii) aggregated loan amounts organized by BLM Field Office showing the general financial and geographical scope of this practice that the BLM facilitates. Forest Guardians contends that the information it seeks under the FOIA in this proceeding does not concern any particular grazing permittee's identity or any information about any specific loan they may have obtained using their public lands grazing permit

-10-

as collateral.

Forest Guardians also contends that the identity of financial institutions who are in the practice of using grazing permits as collateral is neither private nor confidential information that the Livestock Associations and their members have any legitimate interest in concealing or withholding from public release under the FOIA. Forest Guardians asserts that the BLM would not publicly disclose any private or confidential information under the FOIA, because the BLM will redact information from its lien holder records and reveal only financial institution names and aggregated loan amounts for grazing allotments that the various BLM Field Offices manage.

The Livestock Associations contend that Forest Guardians is not accurately characterizing the scope of relief that it seeks in its Motion for Summary Judgment. They argue that this alleged limitation is the equivalent of an amendment of Forest Guardians' Complaint. They contend that Forest Guardians has not filed a motion to amend the Complaint, and thus has not effectively limited the scope of relief as it now contends.

A plaintiff generally must amend its complaint if it later seeks to add another party or proceed under a new or additional cause of action. Similarly, if a party seeks to expand the scope of relief sought in its original complaint in either amount or the nature of what is prayed for, it would violate fundamental fairness and the purpose of notice pleading for the law to not require a formal amendment to the pleadings. These are common situations; in those, a party must seek leave from the Court to amend its pleadings once a defendant files a responsive pleading.

The Livestock Associations do not cite support in the law for their assertion that a party must amend its complaint to narrow -- rather than to expand -- the scope of relief sought in its original complaint. The Court has not found any authority for the proposition that a party may not elect to

litigate for less than the full scope of relief generally stated in its complaint.  Two cases from the Tenth Circuit lend support to the idea that a party will not be bound by the prayer for relief in the complaint.  See Preas v. Phebus, 195 F.2d 61, 63 (10th Cir. 1952)("But the prayer forms no part of the cause of action.  One is entitled to the relief made out by the allegations of the complaint."); Schoonover v. Schoonover, 172 F.2d 526, 530 (10th Cir. 1949)("The prayer of the first count or cause of action asking for reformation of the contract may be disregarded because it is recognized, without exception, that the prayer forms no part of the cause of action, and that a pleader will be entitled to the relief made out by the case and stated in the pleadings, irrespective of what is asked for in the prayer.").  The Court believes that it puts form over substance to say that a plaintiff must amend its complaint to limit the scope of relief it seeks in a proceeding.  The Livestock Associations' argument comes close to contending, in effect, that, unless a plaintiff seeks permission and the Court grants the right to amend its complaint, the law requires a plaintiff  to litigate to obtain all of the potential relief sought in its general claim for relief contained in the complaint.  The Court declines to accept this argument and finds that Forest Guardians has effectively limited its scope of relief.

The Livestock Associations argue that, even if the Court limits Forest Guardians' relief to that set forth in its statements in its Motion for Summary Judgment, the Court should still allow intervention. Forest Guardians still requests information about the Livestock Associations' members' financial institutions.  Specifically, it requests information regarding the identity of participating financial institutions and aggregate loan amounts.  The Livestock Associations point out that even that limited amount of information may very likely jeopardize the financial well-being of their members.  In some small communities, the name of a financial institution alone would enable Forest Guardians to identify the particular permittees who have accepted grazing permit loans.  See

Transcript of Excerpt of Motion Proceedings at 2, lns. 13-20 (November 12, 2003).  Any disturbance or effect on the financial institutions' loans to members may very likely have a chilling effect, which would inhibit these members from obtaining the requisite financing to remain in business.

Forest Guardians argues that the Livestock Associations' contention that release of the aggregated information will harm their ability to obtain loans is speculative.  It is true that no evidence before the Court directly supports this contention.  In addition, at oral argument, counsel for the Livestock Associations conceded that their legally protectable interest was tied to the release of the names of participating financial institutions rather than the aggregated loan amounts.  See id. at 2, ln. 25 - 3, ln. 9.  It is clear, however, that the standard the Livestock Associations must meet is not a high one.  Indeed, the Tenth Circuit has stated that the "threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."  Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.  The Livestock Associations justify their assertion by pointing out that Forest Guardians does not approve of the "lien holder agreement" program and will likely put pressure on financial institutions involved in that lending program.  The Court finds the interest to be sufficient to warrant intervention.

The "lien holder agreements" contain confidential financial information about federal lands grazing permittees.  See Major Decl. ¶8, at 2; Embree Decl. ¶7, at 2.  Even if that information is not directly disclosed, the result will be the same if the aggregated information allows Forest Guardians to determine the identity of individual permittees.  According to the Livestock Associations, release of this financial information to Forest Guardians would have a devastating economic impact on the grazing permittees affected and on the livestock industry as a whole.  See Cowan Decl. ¶¶13-14, at 2; Casabonne Decl. ¶¶13-14, at 2; Major Decl. ¶¶10-15, at 2; Embree Decl. ¶¶9-14, at 2.  The

purpose of the requested intervention is to protect the livestock industry in general and to protect the privacy interests of their members who participate in the "lien holder agreement" system. See Cowan Decl. ¶¶5-6, at 1-2; Casabonne Decl. ¶6, at 2.   Members of the Livestock Associations that participate in the "lien holder agreement" system have a legally protectable interest in the "lien holder agreements," and the personal and private information contained therein.

Forest Guardians is seeking to compel the disclosure of information related to the "lien holder agreements" and the financial information contained therein. See Complaint ¶23b, at 6.  The "lien holder agreements," and the information contained therein, are, therefore, the subject of this litigation. Members of the Livestock Associations have an interest in the continued confidentiality of the financial information that the "lien holder agreements" contain. See Cowan Decl. ¶¶13-14, at 2; Casabonne Decl. ¶¶13-14, at 2; Major Decl. ¶¶13-15, at 2; Embree Decl. ¶¶13-14, at 2.  Because the permittees have interests in the agreements and information, and because this interest is legally protected, the Livestock Associations, on behalf of their members, have an interest that is related to the subject of this lawsuit.  Accordingly, the Livestock Associations have a protectable interest within rule 24(a)(2)'s meaning.

### C.    IMPAIRMENT OF INTEREST.

"Rule 24(a)(2) also requires the intervenors to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest."  Utah Ass'n of Counties v. Clinton, 255 F.3d at 1253.  This inquiry is intertwined with the existence of an interest. See id. ("[T]he question of impairment is not separate from the question of existence of an interest.")(citation omitted).  "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.

-14-

This burden is minimal." Id. (citation and internal quotation marks omitted)(emphasis added).

The Livestock Associations satisfy this third element for intervention. They have an interest in the continued confidentiality of the "lien holder agreements" and the information contained therein. The outcome of this litigation could jeopardize this interest. The same is true even if Forest Guardians prevails only on its limited scope of relief.

If the Court denies the Livestock Associations' intervention, and then compels the BLM to release the "lien holder agreements," this lawsuit will impair the permittees' interests in a practical sense. A compelled release of the agreements could render the permittees' Privacy Act protections meaningless. The invasion of privacy will have already occurred. Moreover, if the Court were to order the release, the permittees would have no recourse for the invasion. The Privacy Act's civil remedies provision applies only to actions that Federal agencies, not Federal courts, take. See 5 U.S.C. §552a(g)(1).

Without intervention, the grazing permittees that the Livestock Associations represent will have no venue to make their Privacy Act arguments and will have no recourse if the protections that the Privacy Act provides are found to be inapplicable. In short, the permittees may not be able to protect their interest in the continued confidentiality of the financial information that the "lien holder agreements" contain. Accordingly, denying intervention to the Livestock Associations may impair the grazing permittees' interests within rule 24(a)(2)'s meaning.

**D.     INADEQUATE REPRESENTATION.**

The Livestock Associations have shown that their motion to intervene is timely, that they claim an interest related to the subject of this litigation, and that the disposition of this action may impair or impede this interest. Under rule 24(a)(2), the Livestock Associations are entitled to

intervene as of right unless existing parties to the litigation adequately represent their interest.  See
Utah Assoc. of Counties v. Clinton, 255 F.3d at 1254.  "Although an applicant for intervention as of
right bears the burden of showing inadequate representation, that burden is the 'minimal' one of
showing that representation 'may' be inadequate."  Id.  See Coalition of Arizona/New Mexico
Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 845 (stating that the
"possibility of divergence of interest need not be great in order to satisfy the burden of the applicants
. . . .").

       Moreover, the burden of showing inadequate representation is met "when the party upon
which the intervenor must rely is the government, whose obligation is to represent not only the
interest of the intervenor but the public interest generally, and who may not view that interest as
coextensive with the intervenor's particular interest."  Utah Assoc. of Counties v. Clinton, 255 F.3d
at 1254.  "[T]he government's representation of the public interest generally cannot be assumed to
be identical to the individual parochial interest of a particular member of the public merely because
both entities occupy the same posture in the litigation.  In litigating on behalf of the general public,
the government is obligated to consider a broad spectrum of views, many of which may conflict with
the particular interest of the would-be intervenor."  Id. at 1255-56.

       Forest Guardians argues that, in light of the scope of relief it seeks in this case, the Livestock
Associations have failed to demonstrate that the BLM will not adequately protect the permitees'
interest in preventing the release of any private or confidential information that the BLM's lien
holder agreement records contain.  Although the BLM has taken the position that the "lien holder
agreements" are exempt from disclosure, the BLM does not adequately represent the Livestock
Associations' interests.  First, the BLM relies exclusively on Exemption 6 of the FOIA for its refusal

-16-

to release the requested documents.  See Complaint ¶¶11, 13, at 3-4.  The BLM has not, at this point, asserted the Privacy Act as a defense to its actions.  The BLM's failure to assert the Privacy Act as a defense, a defense that the Livestock Associations rely upon, demonstrates that the BLM's interests in this matter are not the same as the permittees.

Second, the BLM must represent the general public's interests and not just the interests of the permittees participating in the "lien holder agreement" system.  The general public's interests are not the same as the permittees' interests.  The public is interested in the proper application of the FOIA which, in general, is a disclosure statute.  In defending its actions, the BLM must consider the FOIA's purpose and balance the public's interest in disclosure of the "lien holder agreements" and related information against the permittees' privacy interests in keeping the agreements, and the information contained therein, confidential.  In conducting this balancing test, the BLM may take the position that some of the information contained in the "lien holder agreements" is subject to disclosure.

The permittees, who the Livestock Associations represent, are interested in keeping confidential all of the personal information that the "lien holder agreements" contain, as well as other information regarding the identity of participating financial institutions and aggregated loan amounts.  It is the permittees' position that all of the information contained in the "lien holder agreements" is exempt from mandatory disclosure under the FOIA pursuant to Exemption 6 and that the Privacy Act bars disclosure.  The Livestock Association, on behalf of the permittees, will seek to prevent release of any of the information.

Because the BLM must consider the public's interest in disclosure when defending this case, it is possible, and perhaps likely, that the BLM's interests and the permittees' interests will diverge.

-17-

Accordingly, the BLM may not adequately represent the permittees' interests.  Thus, the Court will grant the Livestock Associations' motion and allow them to intervene as a matter of right.

**II.      RULE 24(b) STANDARDS FOR PERMISSIVE INTERVENTION**

Even if the Court were to deny the Livestock Associations' intervention as of right under rule 24(a)(2), the Court would grant the motion under rule 24(b).  Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  See Fed. R. Civ. P. 24(b).  In this case, the Livestock Associations satisfy the requirements for permissive intervention.

As discussed above, the Livestock Associations' motion is timely.  The Court has not decided any substantive issues, and the Livestock Associations have complied with the briefing schedule that the Court established with respect to the summary judgment motion.  In short, the requested intervention will not change the course of the proceedings.

As to the second element, Forest Guardians opposes the motion for permissive intervention because its limited request for relief in this proceeding does not share a common question of law or fact with the Livestock Associations' interest in protecting against public disclosure of any private or confidential information in the BLM's lien holder agreement records.  The Court, however, concludes that the defenses that the Livestock Associations assert have questions of law and fact in common with the claims and defenses that the original parties assert.  In this case, the BLM refused to release the "lien holder agreements," contending that the documents were exempt from such release by Exemption 6 of the FOIA.  See Complaint ¶¶11, 13, at 3-4.  In addition to Exemption 6,

the Livestock Associations will assert that the Privacy Act bars disclosure of the documents in question. Resolution of the Privacy Act defenses that the Livestock Associations assert will first require a resolution of the Exemption 6 defenses. See 5 U.S.C. §552a(b)(2). Thus, the claims and defense do have common questions of law.

Moreover, common questions exist because the Livestock Associations oppose disclosure of the limited amount of information that Forest Guardians seeks in its new prayer for relief. The Livestock Associations claim that even disclosure of the names of participating financial institutions may harm their members' ability to obtain future financing. Thus, Forest Guardians and the Livestock Associations each raise issues related to the BLM's ability to legally disclose information in response to Forest Guardians' FOIA requests.

Finally, Forest Guardians contends that, allowing permissive intervention will unduly delay and prejudice the adjudication of the claims it actually presents for resolution under the limited scope of relief that it seeks. Forest Guardians maintains that it would be unduly burdensome and prejudicial to allow the Livestock Associations to expand the issues involved in this case to include their claims that the BLM's lien holder records may contain some information that is private or confidential. Forest Guardians maintains that having to litigate such claims about information beyond the scope of the relief it seeks will unduly prejudice it.

Forest Guardians' argument ignores the fact that the Livestock Associations are not simply objecting to the release of the lien holder records themselves. The Livestock Associations also object to the release of information regarding the identities of financial institutions and aggregated loans amounts. Such information is exactly what Forest Guardians seeks in this case. Allowing the Livestock Associations to argue against the very relief sought by Forest Guardians is not unduly

-19-

burdensome or prejudicial, nor will it result in undue delay or complication of the issues. Accordingly, the Court finds that the Livestock Associations meet the three elements required for permissive intervention.

Furthermore, the Livestock Associations will contribute to this case, perhaps significantly. In addition to raising Privacy Act issues, the Livestock Associations will enhance the Court's understanding of the "lien holder agreement" system. It is the members of the Livestock Associations that participate in the "lien holder agreement" system, not Forest Guardians. It is the Livestock Associations, therefore, that may be better situated to develop the underlying factual issues in this matter. Development of the underlying factual issues includes explaining the system's benefits and providing detailed information on how the system operates. A thorough understanding of the "lien holder agreements," and the BLM's role in this system, is necessary for the Court to balance the public's need for disclosure against the permittees' personal privacy interests. See Sheet Metal Workers Local No. 9 v. United States Dep't of Air Force, 63 F.3d 994, 996 (10th Cir. 1995)(stating that Exemption 6 implicitly demands a balancing test between the public's interest in disclosure and the individual's personal privacy interest); Forest Guardians v. United States Forest Serv., Memorandum Opinion and Order at 40 ("The language of Exemption 6 implicitly demands a balancing test.").

The Livestock Associations satisfy the requirements for permissive intervention under rule 24(b). Accordingly, even if intervention as of right under rule 24(a)(2) were not available to the them, the Court would grant them permissive intervention under rule 24(b).

**IT IS THEREFORE ORDERED** that the Proposed Defendant-Intervenors' Motion to Intervene, filed August 11, 2003 (Doc. 12) is granted. The New Mexico Public Lands Council and

-20-

the New Mexico Cattle Growers' Association, on behalf of their members, may intervene in this case

as defendants.


_____

UNITED STATES DISTRICT JUDGE


Counsel:

Richard J. Mietz
Santa Fe, New Mexico

    *Attorney for the Plaintiff*


David C. Iglesias
  United States Attorney
Manuel Lucero
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Defendant*


Lee Peters
Hubert & Hernandez
Las Cruces, New Mexico

Karen Budd-Falen
Richard W. Walden
Budd-Falen Law Offices, P.C.
Cheyenne, Wyoming

    *Attorneys for Proposed Defendant-Intervenors*


-21-